T.C. Memo. 2017-21

UNITED STATES TAX COURT

EDWARD S. FLUME, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent

Docket No. 15772-14L.                    Filed January 30, 2017.

David Rodriguez, for petitioner.

Roberta L. Shumway and Sheila R. Pattison, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Petitioner seeks review pursuant to section 6330(d)(1)[1] of

the Internal Revenue Service's (IRS) determination to sustain a proposed levy

_____

[1]All section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise stated.  All monetary amounts are rounded to the nearest dollar.

**[\*2]** action with respect to petitioner's civil penalty liabilities. The IRS assessed penalties against petitioner under sections 6038 and 6679 totaling $20,000 for 2001, $20,000 for 2002, and $10,000 for each year from tax years 2003 through 2009 for failure to file Forms 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations.

After concessions,[2] the issue for decision is whether petitioner is liable for the penalties assessed against him for his failure to declare his ownership interests in Franchise Food Services de Mexico S.A. de C.V. (FFM) for tax years 2001 and 2002 and in Wilshire Holdings, Inc. (Wilshire-Belize), for tax years 2001 through 2009 (years in issue). We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner was a U.S. citizen residing in Mexico.

---

[2]Respondent concedes that the underlying liabilities are at issue and the appropriate standard of review is de novo, and petitioner concedes that respondent's settlement officer did not abuse his discretion in reviewing the nonliability determinations of the proposed levy. At trial we asked the parties to address the issue of whether there were prohibited ex parte communications between the IRS Office of Appeals and the originating function. Petitioner failed to address this issue and thus is deemed to have conceded it. See Rule 34(b)(4).

**[*3]** I.     Petitioner's Business Activities in Mexico

During the years in issue petitioner operated a real estate development and construction business in Mexico. Petitioner developed land, sold lots, and built luxury homes.

A.     FFM

FFM was incorporated in Mexico in 1995 to operate two fast food franchises that petitioner owned. Initially, FFM was owned by petitioner and Norwick Adams, a U.S. citizen who resided in Mexico. Petitioner and Mr. Adams each held a 50% interest in FFM. Petitioner was president of FFM. The fast food franchises were sold in 1998, but FFM remained intact.

FFM was a section 957(a) controlled foreign corporation (CFC)[3] during years 2001 and 2002. Petitioner owned 50% of FFM's stock for the entirety of 2001. On February 8, 2002, petitioner sold a portion of his stock to Victor Mendez Tornell, reducing his ownership to 9%. During the years in issue Mr. Tornell was a Mexican citizen. Mr. Tornell has never been an officer or a director of FFM.

--------

[3]A CFC is any foreign corporation in which more than 50% of the total combined voting power of classes of stock of the corporation entitled to vote, or the total value of the stock of the corporation, is owned, or is considered as owned (applying sec. 958(b)), by U.S. shareholders on any day during the taxable year of the foreign corporation. Sec. 957(a).

**[*4]** B.     <u>Belizean Wilshire Holdings, Inc.</u>

On April 12, 2001, petitioner and his wife incorporated Wilshire-Belize, a Belizean international business company. Wilshire-Belize issued two bearer shares, to petitioner and his wife, resulting in each holding a 50% interest at the time of incorporation. Petitioner served as president and director, and his wife served as vice president. Wilshire-Belize's original articles of association were later amended to eliminate the two original bearer shares. The amended articles of association were backdated to April 12, 2001, to reflect the date of incorporation. Under the amended articles of association, petitioner, his wife, and their daughter each held a 9% interest and Mr. Tornell held the remaining 73% interest in Wilshire-Belize. The date on which the original articles of association were amended to eliminate the two bearer shares and create the new share ownership structure is unknown.

On October 18, 2005, petitioner and his wife opened an account with United Bank of Switzerland (UBS) under Wilshire-Belize's name (UBS account). Petitioner and his wife were the only individuals with signature authority over the UBS account.

When the UBS account was opened, petitioner provided UBS with Wilshire-Belize's original memorandum and articles of association, a certificate of

[*5] incumbency, and copies of the two bearer shares.  The backdated amended articles of association were not provided to UBS.  UBS' due diligence documents identified petitioner and his wife as the beneficial owners of the UBS account and petitioner as the sole owner of Wilshire-Belize.  Petitioner controlled the UBS account investment activity.  Petitioner and his wife directed disbursements from the UBS account, some of which were deposited directly into their personal bank and debit card accounts.

II.    Examination

Petitioner timely filed his Forms 1040, U.S. Individual Income Tax Return, for the years in issue but did not attach Forms 5471 to any of his originally filed returns.  Petitioner hired Leonard Purcell, a tax preparation firm in Mexico, to prepare his tax returns during the years in issue.  Adriana Luna, a Leonard Purcell employee, prepared petitioner's tax returns.  Petitioner did not inform Ms. Luna until approximately 2008 that he held interests in FFM and Wilshire-Belize.

In 2012 the IRS began an examination of petitioner's ownership and control of foreign corporations.  As early as August 10, 2012, petitioner was made aware of his failure to file Forms 5471.  Petitioner engaged David Rodriguez to represent him during the examination.  Petitioner submitted delinquent Forms 5471 regarding his interests in FFM on January 23, 2013, when Mr. Rodriguez advised

[*6] him of his obligation to do so. Petitioner submitted revised Forms 5471 on April 25, 2013. Both the original and revised Forms 5471 that petitioner submitted were incomplete.

Respondent assessed penalties for petitioner's failure to file Forms 5471 declaring his ownership interests in FFM during 2001 and 2002 and in Wilshire-Belize from 2001 through 2009. Petitioner was assessed a penalty of $20,000 for 2001, two penalties of $10,000 each for 2002, and penalties of $10,000 for each year from taxable year 2003 through 2009. With the exception of the $10,000 penalty regarding FFM for tax year 2002, which was assessed under section 6679(a) on March 11, 2013, all other penalties were assessed under section 6038(b) on February 18, 2013. On December 16, 2013, respondent issued to petitioner Letter CP 90, Final Notice--Notice of Intent to Levy and Notice of your Rights to a Hearing (CDP notice), for the unpaid civil penalties assessed against him for the years in issue.

Petitioner timely filed Form 12153, Request for Collection Due Process or Equivalent Hearing (CDP hearing request). Respondent received petitioner's CDP hearing request on January 13, 2014. It stated that he did not receive notice of the penalties, that he did not understand how the penalties were computed, and that the penalties should not have been assessed. In his CDP hearing request petitioner

[*7] disputed the underlying liabilities but did not challenge the appropriateness of the collection action, propose any collection alternative, or raise any spousal defense.

The CDP hearing was assigned to an IRS settlement officer on February 27, 2014. On April 3, 2014, the settlement officer sent a letter to Mr. Rodriguez to inform him that the liability issue was open for consideration in the CDP hearing because petitioner had had no preassessment opportunity to challenge the civil penalty assessments. The settlement officer afforded petitioner an opportunity to provide documents supporting petitioner's argument that he was not liable for penalties, as well as to prepare a reasonable cause narrative, which petitioner did not submit.

III.     Notice of Determination

On June 3, 2014, the IRS Office of Appeals issued petitioner a Notice of Determination Concerning Collection Action(s) under section 6320 and/or 6330 (notice of determination) for the years in issue. Petitioner timely petitioned this Court for review of the notice of determination.

[*8]                              OPINION

I.    Standard of Review and Burden of Proof

Section 6330(d)(1) grants this Court jurisdiction to review the

Commissioner's determination that the proposed collection action was proper.  In

reviewing the Commissioner's decision to sustain collection actions, where the

validity of the underlying tax liability is properly at issue the Court reviews the

Commissioner's determination of the underlying tax liability de novo.  Sego v.

Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176,

181-182 (2000).  The Court reviews any other administrative determination

regarding proposed collection actions for abuse of discretion.  Sego v.

Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.

Respondent concedes that petitioner sufficiently raised the issue of his underlying

liabilities during the CDP hearing.  Therefore, this case will consider the liabilities

on their merits.

II.   Failure To File Forms 5471

Section 6038(a)(1) imposes information reporting requirements on any U.S.

person, as defined in section 957(c), who controls a foreign corporation.  A person

controls a foreign corporation if he owns or constructively owns stock that is more

than 50% of the total combined voting power of all classes of voting stock or owns

[*9] more than 50% of the total value of shares of all classes of stock.  Sec. 6038(e)(2).  A U.S. person must furnish, with respect to any foreign corporation which that person controls, information that the Secretary may prescribe.  Sec. 6038(a)(1).  Form 5471 and the accompanying schedules are used to satisfy the section 6038 reporting requirements.  The Form 5471 must be filed with the U.S. person's timely filed Federal income tax return.  Sec. 1.6038-2(i), Income Tax Regs.

Additionally, the information reporting requirements prescribed in section 6038(a)(1) also are imposed on any U.S. person treated as a U.S. shareholder of a corporation that was a CFC for an uninterrupted period of 30 days during its annual accounting period and who owned stock in the CFC on the last day of the CFC's annual accounting period.  Secs. 951(a)(1), (b), 6038(a)(4); see also Rev. Proc. 92-70, sec. 2, 1992-2 C.B. 435, 436.  A U.S. shareholder, with respect to any foreign corporation, is a U.S. person who owns under section 958(a), or is considered as owning under section 958(b), 10% or more of the total combined voting power of all classes of stock entitled to vote of the foreign corporation.  Sec. 951(b).

Section 6046 requires information reporting by each U.S. citizen or resident who is at any time an officer or director of a foreign corporation, where more than

[*10] 10% (by vote or value) of stock is owned by a U.S. person. Sec. 6046(a)(1)(A). The stock ownership threshold is met if a U.S. person owns 10% or more of the total value of the foreign corporation's stock or 10% or more of the total combined voting power of all classes of stock with voting rights. Sec. 6046(a)(2). A U.S. person who disposes of sufficient stock in the foreign corporation to reduce his interest to less than the stock ownership requirement is required to provide certain information with respect to the foreign corporation. Sec. 1.6046-1(c)(1)(ii)(c), Income Tax Regs.

When a taxpayer, who was required to do so, fails to complete and file a Form 5471 on time, a fixed penalty of $10,000 per foreign corporation per annual accounting period is imposed. Secs. 6038(b)(1), 6679. If any failure to provide the required information continues for more than 90 days after the day on which the Secretary mails notice of the failure to the U.S. person, the person shall pay a penalty (in addition to the amount required under section 6038(b)(1)) of $10,000 for each 30-day period, or fraction thereof, during which the failure continues with respect to any annual accounting period after the expiration of the 90-day period; however, the increase in any penalty under section 6038(b)(2) shall not exceed $50,000. Sec. 6038(b)(2). Similar penalties apply for failure to timely file Form

**[*11]** 5471 or otherwise provide the information required by section 6046 with respect to an annual accounting period. See secs. 6046(f), 6679(a).

The instructions for Form 5471 describe the categories of persons required to file Form 5471 and the information that each category of filer is required to provide. A category 2 filer is a U.S. person that is an officer or director described in section 6046(a)(1)(A). A category 3 filer is a U.S. person described in section 6046(a)(1)(B). A category 4 filer is a U.S. person that controls a foreign corporation as described in section 6038(a)(1) and (e); and a category 5 filer is a U.S. person that is a U.S. shareholder of a CFC as described in section 6038(a)(4). We discuss below why petitioner was required to submit Forms 5471 for the years in issue regarding his interests in FFM and Wilshire-Belize.

A.   FFM Form 5471 Filing Requirement

Petitioner was a category 5 filer for tax year 2001 because he was a U.S. shareholder who owned stock in a CFC for an uninterrupted period of 30 days or more during tax years 2001. FFM was a CFC throughout tax years 2001 and 2002. Sec. 957(a). Petitioner owned 50% of the stock of FFM for the entire 2001 tax year and maintained his 50% ownership of FFM until February 8, 2002, when he sold 41% of his interest in FFM. Thus, under section 6038(a)(4), petitioner was required to file Form 5471 for FFM for tax year 2001.

**[*12]** Petitioner was required to file Form 5471 as a category 3 filer for FFM for tax year 2002. In 2002 petitioner sold 41% of his original 50% shares, thereby reducing his ownership in FFM to less than 10%. A U.S. shareholder of a CFC must file Form 5471 if the shareholder "[d]isposes of sufficient stock in such foreign corporation to reduce his interest to less than 10 percent of the total combined voting power * * * or the total value of the stock of the foreign corporation". Sec. 1.6046-1(c)(1)(ii)(c), Income Tax Regs. Thus, petitioner was required to file Form 5471 because he reduced his ownership in FFM to less than 10% during tax year 2002.

On January 23, 2013, petitioner filed delinquent Forms 5471 for FFM for tax years 2001 and 2002. Petitioner argues that his delinquent Forms 5471 for FFM for tax years 2001 and 2002 should have a retroactive effect and therefore no penalty should apply. We disagree.

Petitioner's argument is unavailing. Petitioner was required to file a Form 5471 for FFM with his 2001 income tax return on the date that income tax return was due. See secs. 1.6038-2(i), 1.6046-1(j)(1), Income Tax Regs. In order to avoid the penalties, petitioner must show that he had reasonable cause for filing Forms 5471 after the required deadline. See sec. 6038(c)(4)(B), 6679(a)(1). We discuss reasonable cause in part C of this opinion.

**[\*13]** B.   <u>Wilshire-Belize Form 5471 Filing Requirement</u>

In addition to his ownership in FFM, respondent determined that petitioner and his wife each held a 50% interest in Wilshire-Belize during the years at issue. Petitioner argues that he did not have more than a 9% interest in Wilshire-Belize at any time; thus, he was not required to file Forms 5471 for Wilshire-Belize for the years in issue.

Petitioner asserts that the two bearer shares that gave him and his wife each a 50% ownership in Wilshire-Belize were eliminated and that the share ownership structure changed, reducing his ownership to 9% for the years in issue. To support this claim, petitioner provides Wilshire-Belize's amended articles of association showing that he held a 9% interest. However, the backdated amended articles of association and the absence of any evidence as to when or if the change in stock ownership actually occurred contradict petitioner's assertion.

Petitioner was the president and a director of Wilshire-Belize. Petitioner and his wife each held a 50% interest in Wilshire-Belize at the time they incorporated it in 2001. In determining stock ownership of a foreign corporation to determine whether it is a CFC, the rules under section 318(a) apply with modifications. Sec. 958(b). Under these rules, petitioner constructively owned the 50% interest held by his wife. <u>See</u> sec. 318(a)(1)(A)(i). When this 50%

[*14] interest is added to the 50% interest that petitioner directly owned, he owned more than 50% of Wilshire-Belize.  Thus, Wilshire-Belize was a CFC for the years in issue.

The record shows that petitioner retained his 50% ownership up to and including a portion of tax year 2005.  On October 18, 2005, petitioner opened the UBS account using the original articles of association and copies of the two bearer shares.  Petitioner testified that he used these documents to open the bank account because they were all he had available.

Nothing in the record indicates a change in petitioner's 50% ownership for tax years 2006 through 2009.  Petitioner and his wife continuously directed investments into and out of the UBS account and were the only people with signature authority over the UBS account.  Petitioner controlled the UBS account investment activity.  Furthermore, petitioner has failed to precisely indicate when the reduction in ownership occurred or to sufficiently dispute the evidence that suggests that the change did not occur during the years in issue.  Petitioner has merely provided self-serving testimony and a backdated document to support his claim that he maintained only a 9% ownership interest during the tax years in issue.

**[\*15]**  Petitioner was a U.S. shareholder and controlled Wilshire-Belize, making him a category 4 and category 5 filer.  As such, petitioner was required under section 6038 to file Forms 5471 for the years in issue.  Therefore, respondent correctly assessed penalties under section 6038(b) for petitioner's failure to file Forms 5471 for Wilshire-Belize for each year from 2001 to 2009.

C.    Reasonable Cause

To avoid a section 6038(b) penalty, a taxpayer must make an affirmative showing that the failure to furnish the appropriate information with his return was due to reasonable cause.  Sec. 6038(c)(4)(B).  The time for furnishing required information can be extended if the Secretary is satisfied that reasonable cause existed for the delay.  Id.  Although there are no regulations defining "reasonable cause" within the specific context of section 6038, the few cases that have confronted this issue have adopted the Supreme Court's definition as stated in United States v. Boyle, 469 U.S. 241, 246 (1985).  See, e.g., Congdon v. United States, No. 4:09-CV-289, 2011 WL 3880524, at \*2 (E.D. Tex. Aug. 11, 2011); In re Wyly, 552 B.R. 338, 442 (Bankr. N.D. Tex. 2016).  That is that a taxpayer must demonstrate that he exercised ordinary business care and prudence but nevertheless was unable to file within the prescribed time.  Boyle, 469 U.S. at 246.

**[\*16]**  Similar rules apply with respect to the civil penalties imposed under section 6679 for failure to file information required under section 6046.  Sec. 6679(a)(1); sec. 301.6679-1(a), Proced. & Admin. Regs.  If a taxpayer exercises ordinary business care and prudence and is nevertheless unable to obtain and provide the required information, a failure to file will be considered to be due to reasonable cause.  Sec. 301.6679-1(a)(3), Proced. & Admin. Regs.

Petitioner contends that he has established reasonable cause for his failure to file Forms 5471.  Petitioner, however, failed to substantiate this contention.  Petitioner had the opportunity to provide a reasonable cause narrative during the CDP hearing but failed to do so.

To establish reasonable cause through reliance on a tax adviser's advice, the taxpayer must prove:  (i) the adviser was a competent professional with sufficient expertise, (ii) the taxpayer provided necessary and accurate information to the adviser, and (iii) the taxpayer relied in good faith on the adviser's judgment.  Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98-99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioner claims that Ms. Luna failed to advise him that he was required to file Forms 5471 for FFM for tax years 2001 and 2002.  However, petitioner testified that he was unaware of Ms. Luna's qualifications and that he did not

**[*17]** inform her of his interests in FFM and Wilshire-Belize.  Thus, petitioner fails the second <u>Neonatology</u> prong because he did not provide his tax return preparer with all necessary information, barring him from reasonably relying on his tax return preparer's advice.  Therefore, we find that petitioner failed to show reasonable cause for his failure to file Forms 5471.

In reaching our holdings herein, we have considered all arguments the parties made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.