# United States Tax Court

163 T.C. No. 8

RAJU J. MUKHI,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 4329-22L.                     Filed November 18, 2024.

_____

P failed to file Forms 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, for his 2002 through 2013 tax years. R assessed penalties under I.R.C. § 6038(b)(1) against P for this failure. R proposed a levy and filed a lien notice to collect the unpaid penalties, and P timely requested a hearing under I.R.C. §§ 6320 and 6330. After a hearing, R issued a notice of determination to P that in relevant part sustained the collection actions related to the I.R.C. § 6038(b)(1) penalties. P filed his petition with this Court.

Relying on *Farhy v. Commissioner*, 160 T.C. 399, 403–13 (2023), we granted summary judgment in P's favor that R lacked authority to assess the I.R.C. § 6038(b)(1) penalties. *Mukhi v. Commissioner*, No. 4329-22L, 162 T.C. (Apr. 8, 2024). The U.S. Court of Appeals for the D.C. Circuit subsequently reversed our decision in *Farhy* and determined that the I.R.C. § 6038(b)(1) penalty is assessable. *Farhy v. Commissioner*, 100 F.4th 223 (D.C. Cir. 2024). R filed a motion for reconsideration of our holding regarding the I.R.C. § 6038(b)(1) penalties. Any appeal of our decision would presumptively lie in the U.S. Court of Appeals for the Eighth Circuit, which has not yet issued a precedential, published opinion as to whether the I.R.C. § 6038(b)(1) penalty is assessable.

**Served 11/18/24**

*Held*: R lacks statutory authority to assess the penalty under I.R.C. § 6038(b)(1).

*Held, further*, R may not proceed with collection of these penalties from P via the lien or the proposed levy.

_____

*Sanford J. Boxerman* and *Michelle F. Schwerin*, for petitioner.

*Randall L. Eager*, *Alicia H. Eyler*, and *William Benjamin McClendon*, for respondent.

SUPPLEMENTAL OPINION

GREAVES, *Judge*: This case is before the Court on respondent's Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161.[1] In *Mukhi v. Commissioner*, No. 4329-22L, 162 T.C., slip op. at 17–18 (Apr. 8, 2024), we held that the Internal Revenue Service (IRS or respondent) lacks authority to assess the section 6038(b)(1) penalty, and therefore, as a matter of law, respondent may not proceed with the collection activities as they related to these penalties. After an extension of time, respondent filed the motion for reconsideration on this issue, arguing that we should reconsider our holding in the light of the subsequently issued opinion of the U.S. Court of Appeals for the D.C. Circuit in *Farhy v. Commissioner*, 100 F.4th 223 (D.C. Cir. 2024), *rev'g and remanding* 160 T.C. 399 (2023). The D.C. Circuit reversed our decision in *Farhy* and determined that the IRS has authority to assess the section 6038(b)(1) penalty. *Id.* at 230–36. We will grant respondent's motion, and we reaffirm our conclusion that respondent lacks authority to assess the section 6038(b)(1) penalty.

*Background*

The following facts are derived from the pleadings, the parties' motion papers, and the exhibits and declarations attached thereto. They are stated solely for purposes of deciding respondent's motion and not

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). We incorporate herein by reference the background facts in *Mukhi*, 162 T.C., slip op. at 2–9. Below we summarize those facts that are pertinent here. Petitioner resided in Missouri when he timely filed the petition.[2] The parties have stipulated that this case is appealable to the U.S. Court of Appeals for the Eighth Circuit.

Between November 2001 and September 2005 petitioner created three foreign entities, including Sukhmani Partners II Ltd., a foreign corporation for U.S. tax purposes. Petitioner did not timely file Forms 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, from tax year 2002 through 2013 to disclose his ownership interest in this foreign corporation.

After petitioner pleaded guilty to criminal tax violations for subscribing to false U.S. individual income tax returns and willful failure to file reports of foreign bank and financial accounts, respondent began an examination for petitioner's liability for civil tax penalties. During the examination, petitioner filed under protest Forms 5471. At the conclusion of the examination, respondent issued a notice letter, dated September 7, 2017, informing petitioner that the IRS had assessed $120,000 in penalties under section 6038(b)(1) for failure to timely file Form 5471 for tax years 2002 through 2013.[3] The letter informed petitioner of his right to a postassessment conference.

Petitioner filed a protest with the IRS Office of Appeals.[4] In a subsequent postassessment conference, the IRS Office of Appeals concluded that there were no grounds for penalty abatement. During the postassessment conference, respondent began collection actions related in part to the section 6038(b) penalties. Respondent issued CP90, Final Notice–Notice of Intent to Levy and Notice of Your Right to

---

[2] On May 20, 2022, respondent filed a Motion to Consolidate this case with petitioner's related deficiency case at Docket No. 15315-19. On July 21, 2022, we granted the motion and consolidated the cases for trial, briefing, and opinion. Respondent's Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161 relates exclusively to the collection due process case. All references in this opinion relate solely to the collection due process case.

[3] All dollar amounts are rounded to the nearest dollar.

[4] On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019). We will use the name in effect at the times relevant to this case, i.e., the Office of Appeals or Appeals.

a Collection Due Process Hearing, dated July 9, 2018. Respondent issued Letter 3172, Notice of Federal Tax Lien Filing and Your Rights to a Hearing under IRC 6320, dated November 27, 2018. Petitioner timely requested a collection due process hearing.

After a hearing, the settlement officer sustained the collection activities. Petitioner timely filed a petition in this Court asking for review of the notice of determination. The parties subsequently filed cross-motions for partial summary judgment related to various aspects of this case. After the parties filed their respective motions, we held in a separate case that the IRS lacks authority to assess the section 6038(b)(1) penalty. *See Farhy*, 160 T.C. at 403–13. The IRS later appealed *Farhy* to the D.C. Circuit. Respondent filed a Notice of Judicial Ruling acknowledging the *Farhy* appeal. Neither party sought to supplement its respective motion.

Under Rule 121(g), we granted partial summary judgment for petitioner related to the section 6038(b)(1) penalties. *Mukhi*, 162 T.C., slip op. at 17–18. Relying on *Farhy*, 160 T.C. at 403–13, we held that respondent lacked the statutory authority to assess the section 6038(b)(1) penalties. After we granted summary judgment in favor of petitioner, the D.C. Circuit reversed our decision in *Farhy* and concluded that the IRS has authority to assess the section 6038(b)(1) penalty. *See Farhy v. Commissioner*, 100 F.4th at 230–36.

On June 7, 2024, respondent filed the Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161, requesting reconsideration of our opinion with respect to the section 6038(b)(1) penalties in the light of the D.C. Circuit's reversal of our decision in *Farhy*. On July 11, 2024, petitioner filed a Response to Motion for Reconsideration of Findings or Opinion Pursuant to Rule 161.

*Discussion*

I.   *Motion for Reconsideration*

Rule 161 authorizes a party to file a motion for reconsideration of an opinion or findings of fact within 30 days after a written opinion has been served, unless otherwise ordered by the Court. The decision to grant a motion under Rule 161 lies within the Court's discretion. *See Bedrosian v. Commissioner*, 144 T.C. 152, 156 (2015). A motion for reconsideration is generally denied in the absence of substantial error or unusual circumstances. *See Estate of Quick v. Commissioner*, 110 T.C. 440, 441 (1998), *supplementing* 110 T.C. 172 (1998).

Reconsideration is warranted when a subsequent court of appeals decision calls into question the foundation of a prior opinion. *See Brinley v. Commissioner*, 82 T.C. 932, 933 (1984), *vacated and remanded*, 782 F.2d 1326 (5th Cir. 1986).

The Tax Court adheres to the doctrine of stare decisis and thus affords precedential weight to our prior reviewed and division opinions. *See Analog Devices, Inc. & Subs. v. Commissioner*, 147 T.C. 429, 443 (2016). Because of our nationwide jurisdiction, the Court takes seriously its obligation to facilitate uniformity in the tax law. *See Bankers Union Life Ins. Co. v. Commissioner*, 62 T.C. 661, 675 (1974). When one of our decisions is reversed by an appellate court, the Court will "thoroughly reconsider the problem in the light of the reasoning of the reversing appellate court and, if convinced thereby, . . . follow the higher court." *Lawrence v. Commissioner*, 27 T.C. 713, 716–17 (1957), *rev'd per curiam on other grounds*, 258 F.2d 562 (9th Cir. 1958). But if the Court remains convinced that our original decision was right, the proper course is to "follow [our] own honest beliefs until the Supreme Court decides the point" and thus continue to apply our own precedent. *Id.* Our decision in *Golsen v. Commissioner*, 54 T.C. 742 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), created "a narrow exception" to this approach. *Lardas v. Commissioner*, 99 T.C. 490, 494 (1992). In a given case, when a "squarely [o]n point" decision of the appellate court to which an appeal would lie contradicts our own precedent, we will follow the appellate court's decision. *See Golsen*, 54 T.C. at 757. To do otherwise would be "futile and wasteful" given the inevitable reversal from the appellate court. *See Lardas*, 99 T.C. at 494–95.

Our prior holding that the section 6038(b)(1) penalties were not assessable rested exclusively on *Farhy*, 160 T.C. at 403–13. *Mukhi*, 162 T.C., slip op. at 17–18. As noted above, the D.C. Circuit recently reversed *Farhy* and determined that the section 6038(b)(1) penalty is assessable. *Farhy v. Commissioner*, 100 F.4th at 230–36. An appeal from this decision would lie in the Eighth Circuit, and therefore, we are not bound by *Golsen*, 54 T.C. at 757, to follow the decision of the D.C. Circuit. However, this subsequent decision calls into question the basis of our determination that respondent may not proceed with the collection actions as they relate to the section 6038(b)(1) penalties. Because of these unusual circumstances, we will grant respondent's motion for reconsideration.

II.    *Jurisdiction and Standard of Review*

Like other federal courts, we are a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. *See* § 7442; *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). In a collection due process case our jurisdiction is predicated upon the issuance of a valid notice of determination. *See LG Kendrick, LLC v. Commissioner*, 146 T.C. 17, 28–29 (2016), *aff'd*, 684 F. App'x 744 (10th Cir. 2017). As we determined in *Mukhi*, 162 T.C., slip op. at 9–10, respondent issued a valid notice of determination, and we have jurisdiction to review respondent's determination to sustain collection actions.

Where the validity of a taxpayer's underlying tax liability is properly at issue, we review the determination regarding the underlying liability de novo. *See Sego v. Commissioner*, 114 T.C. 604, 610 (2000). We review all other determinations for abuse of discretion. *See id.* "Where, as here, we are faced with a question of law . . . , our holding does not depend on the standard of review we apply. We must reject erroneous views of the law." *Manko v. Commissioner*, 126 T.C. 195, 199 (2006).

III.    *The IRS's Authority to Assess the Section 6038(b)(1) Penalty*

We begin with a brief summary of the information reporting requirements and penalties outlined in section 6038. A U.S. person must file an information return with respect to a foreign business entity that he controls. § 6038(a). Failure to file such a form may result in at least one of two penalties. The first penalty, and subject of this case, is the penalty under section 6038(b)(1). Section 6038(b)(1) imposes a penalty of $10,000 for each tax year for which a U.S. person does not file the required information return.[5] The other penalty available for failure to file the information return is under section 6038(c). Section 6038(c)(1)(A) reduces the amount of foreign tax credit available under section 901. The Commissioner may impose both the section 6038(b)(1) penalty and the section 6038(c) penalty, though a coordination clause reduces the section 6038(c) penalty by the amount of the section 6038(b) penalty. § 6038(c)(3). A U.S. person may avoid liability for both

---

[5] Section 6038(b)(2) imposes a continuation penalty of $10,000 for each 30-day period (or fraction thereof) during which such failure continues after an initial 90-day notice period, subject to a maximum of $50,000. The continuation penalty is not at issue in this case.

penalties if he establishes that reasonable cause exists for the failure to file the information return. § 6038(c)(4)(B).

The parties dispute whether the IRS has authority to assess the section 6038(b)(1) penalty. To resolve this dispute, we look to the statute and "presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992); *see also Valley Park Ranch, LLC v. Commissioner*, No. 12384-20, 162 T.C., slip op. at 22 (Mar. 28, 2024). When a statute's text is unambiguous, our sole function is to enforce the terms as written. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000); *see also Conn. Nat'l Bank*, 503 U.S. at 253–54 ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981))); *Valley Park Ranch, LLC*, 162 T.C., slip op. at 22. Applying these principles here produces a clear result.

A.     *Respondent's Assessment Authority*

By default, an agency may collect a civil penalty through a civil action in a district court. *See* 28 U.S.C. § 2461(a). Congress may alter this default rule. *See Helvering v. Mitchell*, 303 U.S. 391, 399 (1938) (citing *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). However, as with other areas of administrative law, "[a]gencies have only those powers given to them by Congress." *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022).

The IRS's authority to assess certain liabilities is derived from section 6201(a). Section 6201(a) authorizes and requires the IRS to assess "all taxes (including interest, additional amounts, additions to the tax, and assessable penalties)" imposed by the Code. Assessment is "the formal recording of a taxpayer's tax liability." *Baltic v. Commissioner*, 129 T.C. 178, 183 (2007); *see also* § 6203. After an amount is assessed, the IRS may take certain administrative actions to collect the tax. *See, e.g.*, §§ 6502(a) (permitting collection of a tax by levy), 6322 (providing that the lien imposed by section 6321 arises when an assessment is made). The Commissioner generally must take certain steps before making an assessment; however, he may immediately assess "assessable penalties" not subject to the Court's deficiency jurisdiction. §§ 6201, 6665(a)(1), 6671(a); *see also Williams v. Commissioner*, 131 T.C. 54, 58 n.4 (2008).

Respondent argues for an expansive reading of section 6201(a) that would encompass all exactions in the Code. He advances two arguments in support of this conclusion. Neither is persuasive.

Respondent first rehashes his previous argument that we rejected in *Farhy*. Respondent urges us to read "taxes" as used in section 6201(a) as covering all exactions in the Code unless otherwise specified. To support his argument, respondent points to the parenthetical in section 6201(a), which provides an illustrative list of "taxes" rather than an exhaustive list. For the same reasons set forth in *Farhy*, 160 T.C. at 406–10, we do not adopt this reading. We briefly summarize the reasoning here.

Respondent is correct that the word "including" typically denotes an illustrative list. *See Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) ("[T]he word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive."). However, it does not therefore follow that the definition becomes inclusive of every exaction in the Code. Such a reading renders a portion of the parenthetical superfluous. For example, if Congress intended all exactions provided for in the Code—and specifically all penalties—to be assessable by the IRS, the adjective "assessable" would be unnecessary to modify "penalties." The use of the word "assessable" denotes that the IRS's assessment authority is more limited than all penalties set forth in the Code.

Reading "taxes" as encompassing all exactions would also render superfluous the various Code provisions deeming penalties to be taxes for certain purposes. It has been firmly established that taxes and penalties are two distinct categories of exactions. *See Grajales v. Commissioner*, 156 T.C. 55, 61 (2021) (analyzing whether an exaction is a tax or a penalty by reference to the label Congress chose to apply to it), *aff'd*, 47 F.4th 58 (2d Cir. 2022); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 546 (2012) ("The Code contains many provisions treating taxes and assessable penalties as distinct terms. . . . There would, for example, be no need for § 6671(a) to deem 'tax' to refer to certain assessable penalties if the Code already included all such penalties in the term 'tax.'"); *Chadwick v. Commissioner*, 154 T.C. 84, 93 (2020) (stating that sections 6665 and 6671 "do not characterize 'penalties' as something other than penalties" but instead simply specify the manner in which penalties within their scope are to be assessed and collected). However, for various purposes the Code deems penalties to be taxes. For example, section 6665(a)(2) deems any reference in the Code to "taxes" "also to refer to the additions to the tax, additional

amounts, and penalties provided by" chapter 68 of subtitle F. Under respondent's theory, there would be no need for these deeming provisions because such penalties would already be included within the definition of tax. For the above reasons, we reject the argument.

Respondent also argues that in the recodification of the Code in 1954, Congress did not intend to change the scope of the IRS's assessment authority from the 1939 version of the Code. To support this argument, respondent points to the silence in the legislative history regarding a material change to the IRS's authority in section 6201(a). This argument is based on an exception to the reenactment canon.

The reenactment canon provides: "When Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021) (quoting *Ross v. Blake*, 578 U.S. 632, 641–62 (2016)). However, there is an exception to this rule: A court will generally presume no substantive changes were intended with Congress's recodification of existing law unless the intent is clear. *Finley v. United States*, 490 U.S. 545, 554 (1989) (citing *Anderson v. Pac. Coast S.S. Co.*, 225 U.S. 187, 199 (1912)); *United States v. Ryder*, 110 U.S. 729, 740 (1884); *United States v. Thompson*, 319 F.2d 665, 669 (2d Cir. 1963) ("It is well settled that where statutes are revised and consolidated a change in phraseology does not import a change in the law unless the intent of the legislature to alter the law is evident or the language of the new act is palpably such as to require a different construction.").

Section 3640 of the Internal Revenue Code of 1939 is the predecessor to the section we know today as section 6201(a). Section 3640 provided that "[t]he Commissioner is authorized and required to make the inquiries, determinations, and assessments of *all taxes and penalties* imposed by this title." (Emphasis added.) In 1954 Congress amended section 6201(a) to provide: "The Secretary or his delegate is authorized and required to make the inquiries, determinations, and assessments of *all taxes (including interest, additional amounts, additions to the tax, and assessable penalties)* imposed by this title . . . ." (Emphasis added.) We must determine whether Congress intended to enact a substantive change to the IRS's assessment authority.

"Congress expresses its intentions through statutory text passed by both Houses and signed by the President (or passed over a Presidential veto)." *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496 (2022); *see also Benjamin v. SSA* (*In re Benjamin*), 932 F.3d 293, 298

(5th Cir. 2019) (using the statutory text to determine whether Congress intended a substantive change during a recodification). Using the statutory text as our guide, it is clear Congress intended a substantive change to the IRS's authority. From the 1939 Code, the IRS had authority to assess two distinct categories of liabilities: (1) all taxes and (2) all penalties. § 3640 (1952). In the 1954 recodification, Congress specified that the IRS had assessment authority only over all taxes. § 6201(a) (1954). This text clearly reduced the scope of the IRS's assessment authority as the text no longer provided a blanket power to assess all penalties. Instead, the IRS had authority only to assess "all taxes."

In addition to removing the blanket assessment authority for all penalties, Congress specified how we should read "all taxes" by virtue of the list in the parenthetical. In reference to penalties, this parenthetical includes only "assessable penalties." Congress could have chosen not to include the adjective "assessable" before penalties, similar to the 1939 Code—but it did not. The plain meaning of assessable penalties is a necessarily more limited definition than all penalties because it imposes an additional condition. This clear text expressed Congress's intent for a substantive change. This renders the recodification exception inapplicable. Therefore, we must read the change in the text of the statute to have a "real and substantial effect" in that the IRS's assessment authority was limited after 1954.

The legislative history respondent cites cannot overcome this clear statutory text. *United States v. Wells*, 519 U.S. 482, 497 (1997) (stating that legislative history "does nothing to muddy the ostensibly unambiguous provision of the statute as enacted by Congress"); *Tidewater Oil Co. v. United States*, 409 U.S. 151, 162–63 (1972) (resorting to legislative history to determine whether Congress intended a substantive change during a codification when the text was "susceptible of two plausible constructions"); *Benjamin*, 932 F.3d at 298–300. The text is clear, and therefore we need not consider legislative history to attempt to ascertain Congress's intentions.

Therefore, we reject respondent's argument that section 6201(a) authorizes the IRS to assess all exactions found in the Code. Section 6201(a) grants the IRS authority to assess all taxes, which include assessable penalties. Lacking this broad assessment power, we must determine whether the section 6038(b)(1) penalty is an "assessable penalty" and thus falls under the scope of section 6201(a).

B.    *Section 6038(b)(1)*

Section 6038(b)(1) provides:

If any person fails to furnish, within the time prescribed under paragraph (2) of subsection (a), any information with respect to any foreign business entity required under paragraph (1) of subsection (a), such person shall pay a penalty of $10,000 for each annual accounting period with respect to which such failure exists.

Nothing in the text of section 6038(b)(1) expressly authorizes the IRS to assess the section 6038(b)(1) penalty. The text also does not set forth the procedure the IRS must use to collect the tax. Instead, the text merely sets forth that a taxpayer shall pay the penalty for violation of the statute without specifying a mode of recovery.

This absence of text becomes even more pronounced when compared to the text of other penalty statutes. In *Farhy*, 160 T.C. at 405–06, we conducted a survey of other civil penalties in the Code, all of which expressly detail that the IRS may assess the penalty. We take a closer look at these statutes here.

Sections 6671(a) and 6665(a) sweep many civil penalties provided for in the Code into the definition of an assessable penalty. Section 6671(a) provides that penalties in Subchapter B, Assessable Penalties, "shall be paid upon notice and demand by the Secretary, and *shall be assessed* and collected *in the same manner as taxes*." (Emphasis added.) With nearly identical text section 6665(a) provides that penalties in Chapter 68, Additions to the Tax, Additional Amounts, and Assessable Penalties, "shall be paid upon notice and demand and *shall be assessed*, collected, and paid *in the same manner as taxes*." (Emphasis added.) And what does it mean for a penalty to be assessed in the same manner as a tax? The IRS will assess the penalty under section 6201(a). It is worth noting that section 6038(b)(1) is not in subchapter B or chapter 68. Thus, the broad text in sections 6671(a) and 6665(a) does not make section 6038(b)(1) penalties assessable. However, a penalty need not be in chapter 68 to be assessable.

Outside chapter 68, Congress takes several approaches to expressly indicate that a penalty is assessable. These statutes provide clear text regarding the assessment or mode of recovery. Most of these civil penalty statutes direct the IRS to assess the penalties in the same manner as those collected under section 6671(a) or 6665(a) or a penalty

assessable thereunder. *See, e.g.*, §§ 527(j)(1) ("shall be assessed and collected in the same manner as penalties imposed by section 6652(c)"), 4980H(d)(1) ("shall be assessed and collected in the same manner as an assessable penalty under subchapter B of chapter 68"), 5000A(g)(1) ("shall be assessed and collected in the same manner as an assessable penalty under subchapter B of chapter 68"), 5114(c)(3) ("shall be assessed, collected, and paid in the same manner as taxes, as provided in section 6665(a)"), 5684(b) ("shall be assessed, collected, and paid in the same manner as taxes, as provided in section 6665(a)"), 5761(e) ("shall be assessed, collected, and paid in the same manner as taxes, as provided in section 6665(a)").

Other civil penalty statutes follow the guide of sections 6671(a) and 6665(a) and dictate that the penalty is treated as a tax. *See, e.g.*, § 9707(f) ("shall be treated in the same manner as the tax imposed by section 4980B"). Finally, other statutes dictate that the penalty should be paid in the same manner as a tax. *See, e.g.*, §§ 856(g)(5)(C) ("pays (as prescribed by the Secretary in regulations and in the same manner as tax)"), 857(f)(2)(A) ("shall pay (on notice and demand by the Secretary and in the same manner as tax)").

We highlight the above penalty statutes to illustrate text that could plausibly indicate that the IRS has authority to assess a penalty. Section 6038(b)(1) does not contain any text that approaches the assessment text in the other civil penalty statutes: There is no text demanding that the penalty be treated as an assessable penalty, there is no text indicating the penalty should be treated as a tax, and there is no text directing the taxpayer to pay the penalty in a manner like a tax. It becomes clear in reviewing the plain text of section 6038(b)(1) and similar civil penalty statutes that Congress did not grant the IRS authority to assess the section 6038(b)(1) penalty.

In the absence of a specified mode of recovery, we fall back on the default rules of collection under 28 U.S.C. § 2461(a), which expressly provides that "[w]henever a civil fine, penalty or pecuniary forfeiture is prescribed for the violation of an Act of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action." The section 6038(b)(1) penalty is a civil penalty prescribed for a violation of section 6038(a). *See* Revenue Act of 1962, Pub. L. No. 87-834, § 20(a), 76 Stat. 960, 1059, *amended by* Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, § 338, 96 Stat. 324, 631. The text of section 6038(b)(1) does not specify a mode of collection. Therefore, the default rule of 28 U.S.C. § 2461(a) applies.

Because "[a]gencies have only those powers given to them by Congress," the Commissioner does not have authority to assess the section 6038(b)(1) penalty. *See West Virginia*, 142 S. Ct. at 2609. Therefore, we need not look any further to determine that the IRS does not have authority to assess the section 6038(b)(1) penalty. *Rubin*, 449 U.S. at 430 ("When we find the terms of a statute unambiguous, judicial inquiry is complete . . . .").

### C. *Respondent's Other Arguments*

Respondent advances several arguments as to why we should ignore the plain text of the statute to find that the IRS has assessment authority for the section 6038(b)(1) penalty. We address those arguments now for sake of completeness. None of these arguments alters the result.

### 1. *Legislative History*

Respondent argues that the legislative history surrounding the addition of the section 6038(b)(1) penalty indicates that Congress intended the penalty to be assessable. This argument is based *primarily* on the interaction between the section 6038(b)(1) penalty and the section 6038(c) penalty. We note that when the text of a statute is unambiguous, our analysis ends there, and we need not consider legislative history. *Castro-Huerta*, 142 S. Ct. at 2496 ("As this Court has repeatedly stated, the text of a law controls over purported legislative intentions unmoored from any statutory text."). However, "[f]or those who consider legislative history relevant," *Warger v. Shauers*, 574 U.S. 40, 48 (2014), it reenforces our conclusion.

Section 6038 was added to the Code in 1960 and included only the section 6038(c) penalty.[6] Act of Sept. 14, 1960, Pub. L. No. 86-780, § 6(a), 74 Stat. 1010, 1014 (codified at section 6038). For more than 20 years, the section 6038(c) penalty was the sole enforcement mechanism for failure to comply with reporting obligations. However, because it was difficult to administer, the IRS rarely pursued section 6038(c) penalties against taxpayers. S. Rep. No. 97-494 (Vol. 1), at 299 (1982), *reprinted in* 1982 U.S.C.C.A.N. 781, 1042.

---

[6] This penalty was originally in section 6038(b). We will continue to refer to the foreign tax credit penalty as the penalty under section 6038(c) for consistency and clarity.

Noting the lack of action by the IRS on the section 6038(c) penalty, Congress amended section 6038 to include an additional penalty, the section 6038(b) penalty. Section 6038(b) was added to the Code in 1982 by TEFRA § 338, 96 Stat. at 631. A Senate Finance Committee report sets forth an explanation as to why the section 6038(b) penalty was added:

> Despite complaints about inadequate reporting with respect to controlled foreign corporations, penalties generally are not imposed (sec. 6038([c])). In part, this is because the penalty is complicated. It also may be unduly harsh in some cases, because a taxpayer could incur a substantial penalty for a minor failure. On the other hand, a sanction reducing credible foreign taxes is of no use if the U.S. person required to report paid no foreign income taxes during the year in question.

S. Rep. No. 97-494 (Vol. 1), at 299, 1982 U.S.C.C.A.N. at 1042. Congress retained the section 6038(c) penalty to permit the IRS to assert either or both penalties as it deemed fit. Congress also amended section 6038 to include a coordination provision in those instances in which the IRS opted to pursue both penalties. § 6038(c)(3). Section 6038(c)(3) provides that the section 6038(c) penalty will be reduced by the amount of the section 6038(b) penalty.

Respondent relies exclusively on the Senate Finance Committee report quoted above for the argument that Congress intended the penalty to be assessable. Respondent argues that if Congress intended to provide the IRS with a simpler penalty to administer than the section 6038(c) penalty, Congress could achieve this goal only by making the section 6038(b) penalty assessable. As in *Farhy*, 160 T.C. at 412–13, we reject any argument that the legislative history dictates that the section 6038(b) penalty is assessable.

Nothing in the Senate Finance Committee report states that the penalty is assessable or the manner in which the IRS can collect the section 6038(b) penalty. This absence is particularly pronounced in comparison to the discussions of other penalties established by the same act. In discussing these other penalties, the report expressly states that those penalties are assessable. S. Rep. No. 97-494 (Vol. 1), at 267, 277, 1982 U.S.C.C.A.N. at 1015, 1024. Regarding the section 6700 penalty for promoters of abusive tax shelters, the report states: "The penalty for promoting an abusive tax shelter is an *assessable penalty . . . ." Id.*

at 267, 1982 U.S.C.C.A.N. at 1015 (emphasis added).  In discussing the section 6702 penalty for a frivolous return, the report likewise states that the penalty is "immediately assessable."  *Id.* at 277, 1982 U.S.C.C.A.N. at 1024.  Given the specification of the IRS's assessment authority in relation to other penalties, the absence of such specification in the discussion of section 6038(b) appears intentional.

Relying on the D.C. Circuit's opinion in *Farhy*, respondent urges us to read the phrase in the Senate Finance Committee report that the section 6038(c) "penalty is complicated" as evidence that Congress intended the section 6038(b) penalty to be assessable.  As noted above, nothing in this phrase touches on the IRS's authority to assess the penalty or the mode of collection.  When read in context, this statement appears to be directed at the unpredictable effect of the penalty that could be too harsh or lenient depending on a taxpayer's foreign tax credit.  It also strikes us as unusual that Congress would resolve the "unduly harsh" section 6038(c) penalty by creating a penalty that is not subject to any pre-assessment judicial review.

This reading also appears to rest on a misunderstanding of tax procedure related to whether the section 6038(c) penalty is assessable.  *Farhy v. Commissioner*, 100 F.4th at 228.  Respondent argues that the lawsuit that would be required to collect the section 6038(b) penalty is necessarily more complicated than the collection of the section 6038(c) penalty.  The section 6038(c) penalty operates by reducing the foreign tax credit claimed by a taxpayer, which he otherwise could use to offset his income.  This adjustment creates an underpayment of tax or more commonly, a deficiency. § 6211(a).  Thus, the resulting adjustment from a section 6038(c) penalty would be subject to the typical deficiency procedures.  §§ 6211(a), 6212(a).

Being subject to deficiency procedures creates a whole host of obligations on the IRS before the amount can be assessed and collected.  The IRS must send a notice of deficiency to the taxpayer's last known address. § 6212(a).  This begins the 90-day period for the taxpayer to file a petition in this Court for prepayment review. § 6213(a).  The IRS may not assess or collect the deficiency during this period.  *Id.*  If the taxpayer files a petition in this Court, the IRS may not assess the deficiency until our decision becomes final.  *Id.*  When the decision of this Court becomes final, the IRS must assess the deficiency as determined by the Court. § 6215(a).  Given the various procedural requirements the section 6038(c) penalty is subject to, it does not

necessarily follow that a referral to the Department of Justice to file a lawsuit in a district court is more complicated.

Respondent has not cited any other legislative history to support his theory, nor could we find any. We will not read a passing statement about the complicated nature of a penalty as empowering the IRS to assess a different penalty.

### 2. *Reasonable Cause Determination*

Respondent argues that in holding that the section 6038(b)(1) penalty is not assessable, we deprive the IRS of the ability to ascertain whether a taxpayer meets the reasonable cause exception under section 6038. The statute provides:

> For purposes of [the section 6038(b) and 6038(c) penalties], the time prescribed . . . to furnish information (and the beginning of the 90-day period after notice by the Secretary) shall be treated as being not earlier than the last day on which (as shown to the satisfaction of the Secretary) reasonable cause existed for failure to furnish such information.

§ 6038(c)(4)(B).

Respondent argues that the tools needed to make this determination are found in section 6201(a). Section 6201(a) provides: "The Secretary is authorized and required to make the inquiries, determinations . . . of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title." Respondent cites this provision as the sole authority at his disposal to make the reasonable cause determination. We reject this argument.

The IRS's broad enforcement authority does not come exclusively from section 6201(a). Instead, the bulk of the IRS's authority is derived from section 7602. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984) ("In order to encourage effective tax investigations, Congress has endowed the IRS with expansive information-gathering authority; § 7602 is the centerpiece of that congressional design."). Section 7602(a) grants the IRS authority to examine a taxpayer's books and records, issue summonses, take testimony of a taxpayer for the purposes of ascertaining the correctness of any return, make a return where none is filed, determine the liability of any person for any internal

revenue tax, and collect any such liability.[7]  The Supreme Court "has consistently construed congressional intent to require that if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax Code, that authority should be upheld absent express statutory prohibition or substantial countervailing policies."  *United States v. Euge*, 444 U.S. 707, 711 (1980); *see also Arthur Young & Co.*, 465 U.S. at 816.  We are satisfied that section 7602 provides the IRS with sufficient authority to carry out the necessary investigative activities needed to enforce section 6038.

A related rationale from the D.C. Circuit in *Farhy*, not advanced by respondent, is that the text "to the satisfaction of the Secretary" would make sense only if the section 6038(b)(1) penalty was assessable. The D.C. Circuit reasoned that if the IRS must file a case in the district court, it would be the district court and not the Secretary that would make the reasonable cause determination.  *Farhy v. Commissioner*, 100 F.4th at 233.  Under the theory that the penalty is assessable, the Secretary could make the reasonable cause determination during a post-assessment conference or in a collection due process hearing in which the taxpayer can "'provide a reasonable cause narrative during the CDP hearing' to an IRS employee acting with delegated authority from the Secretary."  *Id.* (quoting *Flume v. Commissioner*, T.C. Memo. 2017-21, at *16); *see also* Treas. Reg. § 1.6038-2(k)(3)(ii) (providing that a taxpayer can assert a reasonable cause defense in a written statement to the IRS containing a declaration under penalty of perjury).  We are not persuaded by this rationale.

The IRS can still make a reasonable cause determination if the section 6038(b)(1) penalty is not assessable.  This determination could come before the referral.  There is nothing in the statute's text that demands that the IRS make the reasonable cause determination after assessment of the penalty.  Therefore, our holding that the section

---

[7] Section 7602 grants authority to "the Secretary," which section 7701(a)(11)(B) defines as the Secretary of the Treasury or his delegate.  The regulations confirm that the Secretary of the Treasury has delegated such authority to the IRS.  *See, e.g.,* Treas. Reg. § 301.7602-1(a).

6038(b)(1) penalty is not assessable does not conflict with the reasonable cause text.[8]

The D.C. Circuit's reliance on a collection due process hearing as the intended forum for the IRS to make the reasonable cause determination is misplaced. The section 6038(b)(1) penalty was added to the Code in 1982 and the collection due process regime was added in 1998 by the IRS Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3401, 112 Stat. 685, 746–50. The reasonable cause exception far predates either of these provisions, dating back to the 1960 enactment of section 6038. *See* Pub. L. No. 86-780, § 6(a), 74 Stat. 1010, 1015 (1960). When drafting the reasonable cause text in 1960, Congress could not have intended to invoke the collection due process regime that would not be enacted for nearly 40 years. Likewise, Congress could not have intended that the IRS make a reasonable cause determination as it relates to the section 6038(b)(1) penalty in a collection due process hearing. Thus, we place no significance on the possibility that a taxpayer could assert a reasonable cause defense at a collection due process hearing.

3. *Administrative Burden of Collecting Penalties Under Section 6038(b)(1) and (c)*

Respondent next argues that holding that the section 6038(b)(1) penalty is not assessable would create two paths of enforcement: a proceeding in a district court to collect the section 6038(b)(1) penalty and a separate proceeding to collect the section 6038(c) penalty. Respondent argues that this will pose a significant administrative burden because he will have to wait for the completion of the district court litigation to make adjustments related to section 6038(c) because of the coordination provision. As a reminder, the penalty under section 6038(c) will be reduced to the extent of the section 6038(b) penalty. § 6038(c)(3). Respondent also argues that preclusion issues will occur with this two-track process.

We start by noting that "pleas of administrative inconvenience . . . never 'justify departing from the statute's clear text.'" *Niz-Chavez v.*

---

[8] In any event, the phrase "to the satisfaction of the Secretary" does not vest in the Commissioner absolute and exclusive authority to make such a determination. *See United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 392 (1934) (holding that such a phrase does not "preclud[e] any examination of such claims in the court"); *Dwinnell & Co. v. Commissioner*, 33 T.C. 827, 834 (1960); *Wood v. Commissioner*, T.C. Memo. 2021-103, at *12–17.

*Garland*, 141 S. Ct. 1474, 1485 (2021) (quoting *Pereira v. Sessions*, 138 S. Ct. 2105, 2118 (2018)); *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2458 (2024); *Abdo v. Commissioner*, No. 5514-20, 162 T.C., slip op. at 21 (Apr. 2, 2024). As stated above, the text of section 6038 is clear in that the IRS does not have authority to assess the penalty under section 6038(b)(1). Congress could have chosen to give the IRS assessment power for this penalty. Therefore, no matter the administrative burden on the IRS, we follow the plain text of the statute.

While this is sufficient to reject respondent's policy arguments on coordinating the two penalties, we add that the alleged administrative burden is overstated. It appears that the Commissioner rarely asserts the section 6038(c) penalty. We found only one case after the addition of the section 6038(b)(1) penalty in which the section 6038(c) penalty was mentioned. *Wheaton v. United States*, 888 F. Supp. 622, 624 (D.N.J. 1995). The limited use of the penalty under section 6038(c) substantially reduces the Commissioner's alleged burden and concerns regarding preclusion.

Even if the split path of enforcement triggers preclusion issues, they are not unique to our reading of the IRS's authority. In fact, this case demonstrates that preclusion issues may arise when the Commissioner assesses the section 6038(b)(1) penalty. Petitioner attempted, albeit unsuccessfully, to argue that respondent was precluded from taking a position contrary to the Government's position in his criminal tax proceeding. We were able to dispatch this argument and trust that other courts will likewise apply the long-developed doctrines of claim and issue preclusion where relevant.

Any coordination issues between section 6038(b) and section 6038(c) are significantly amplified under the D.C. Circuit's reliance on administrative assessment and deficiency procedures. The D.C. Circuit relies heavily on the assumption that a taxpayer will eventually be entitled to judicial review of the penalty determination under our jurisdiction to review a collection due process determination. *See Farhy v. Commissioner*, 100 F.4th at 227, 232. Although petitioner was entitled to challenge his underlying liability in this case, his experience is the exception and not the rule.

Section 6330(c)(2) permits a taxpayer to challenge "the existence or amount of the underlying tax liability" in a CDP hearing if he did not

have a prior opportunity to challenge the tax liability.[9]   A prior opportunity to challenge the tax liability includes a conference with the IRS Office of Appeals either before or after assessment.  *See* Treas. Reg. § 301.6330-1(e)(3), Q&A-E2.  The IRS routinely offers taxpayers post-assessment conferences related to the section 6038(b)(1) penalty.  *See Internal Revenue Manual* 8.11.5.1, 8.11.5.14.1 (Dec. 18, 2015).  These postassessment conferences, which cannot be appealed to any court, foreclose our review of the underlying liability in a subsequent collection due process proceeding.  *Lewis v. Commissioner*, 128 T.C. 48, 61 (2007).[10]  This functionally places the IRS's assessment determination beyond the review of any court, except possibly in a refund suit.

Coordinating this administrative assessment with the deficiency procedures for the section 6038(c) penalty is unworkable.  Under the D.C. Circuit's framework, the IRS would assess the section 6038(b)(1) penalty, and that determination in most cases would be beyond court review.  The IRS then turns to the section 6038(c) penalty, as reduced by the section 6038(b)(1) penalty, and determines that a taxpayer's foreign tax credit should be reduced.  To enforce this penalty, the IRS sends the taxpayer a notice of deficiency, and the taxpayer files a petition with this Court.  We review the determinations made in the notice of deficiency de novo.  *See Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 329 (1974).  This review would include the reduction of the taxpayer's foreign tax credit under section 6038(c) that the IRS reduced by the amount of the section 6038(b)(1) penalty.

What do we make of this reduction?  Is the amount of the section 6038(b)(1) penalty that has likely never been reviewed by a court set in stone?  Or does a determination of the correct amount of the section 6038(b)(1) penalty fall under our expansive redetermination of the correct tax liability for the year at issue?  The coordination of the section 6038(b)(1) and section 6038(c) penalties is far from straightforward under the D.C. Circuit's holding.

---

[9] A taxpayer is also prohibited from challenging his underlying liability if he received a notice of deficiency.  § 6330(c)(2).  If the section 6038(b) penalty is assessable, the taxpayer would not receive a notice of deficiency.

[10] Petitioner was entitled to challenge his underlying liability in this case only because the postassessment conference had not concluded when the IRS began collection actions.  *See Perkins v. Commissioner*, 129 T.C. 58, 66 (2007).

### 4. *Prior Construction Canon*

One final canon of statutory construction noted in passing by the D.C. Circuit bears mention: the prior construction canon. As additional support for its conclusion that the section 6038(b) penalty is assessable, the D.C. Circuit reasoned that Congress adopted the IRS's interpretation that it had authority to assess the section 6038(b)(1) penalty by reenacting section 6038 without significant amendment to the text. *Farhy v. Commissioner*, 100 F.4th at 236. Again, we note that where the text of a statute is unambiguous, our analysis ends. *Brown v. Gardner*, 513 U.S. 115, 120–21 (1994) ("There is an obvious trump to the reenactment argument, however, in the rule that '[w]here the law is plain, subsequent reenactment does not constitute an adoption of a previous administrative construction.'" (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991))). To the extent it is relevant, the prior construction canon does not support a finding that the section 6038(b)(1) penalty is assessable.

"When the statute giving rise to the longstanding interpretation has been reenacted without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *FDIC v. Phila. Gear Corp.*, 476 U.S. 426, 437 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275 (1974)). However, this rule does not apply if there is no evidence in the congressional record surrounding the reenactment that mentions the agencies' interpretation or no evidence that Congress knew of the agencies' interpretation. *Brown*, 513 U.S. at 120–21; *United States v. Calamaro*, 354 U.S. 351, 359 (1957); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955) ("Re-enactment—particularly without the slightest affirmative indication that Congress ever had the [interpretation] before it—is an unreliable indicium at best.").

Since the introduction of the section 6038(b)(1) penalty, Congress has amended section 6038 seven times, with the most recent reenactment in 2017. Respondent and the D.C. Circuit failed to cite any legislative history documents related to these amendments that indicate that Congress was aware of the IRS's interpretation that the section 6038(b)(1) penalty is assessable. We likewise did not find any reference to the IRS's interpretation in the congressional record related to these amendments.

In expanding our search to other congressional sessions around the time of the amendments, we found one reference to the fact that the

IRS assessed the section 6038(b)(1) penalty in a Joint Committee on Taxation report prepared in advance of a Senate Finance Committee hearing on April 16, 2013. Staff of J. Comm. on Tax'n, 113th Cong., Present Law and Background Information Related to Selected Tax Procedure and Administrative Issues 25 (J. Comm. Print 2013). In this report, the Joint Committee on Taxation references in passing the section 6038(b)(1) penalty. In a section of the report focusing on the perception of fairness related to the automatic assessment of penalties, the Joint Committee on Taxation states: "The IRS automatically assesses penalties through the application of its automated matching system under section 6038(b)(1) . . . and under section 6651(a)(1) . . . ." *Id.*

This passing reference does not clearly state that the IRS was assessing the section 6038(b)(1) penalty within the meaning of section 6201(a). Instead it appears to refer to the IRS's Automated Underreporter Program and Automated Substitute for Return Program in which certain penalties are asserted in automatic notices sent to taxpayers. Even if this report did clearly set forth the IRS's interpretation, there is no evidence Congress was aware of the interpretation. The assessment of the section 6038(b)(1) penalty was not mentioned in the subsequent Senate Finance Committee hearing. *See Tax Fraud and Tax ID Theft: Moving Forward with Solutions: Hearing Before the S. Comm. On Fin.*, 113th Cong. (2013).

The lack of a formal policy statement regarding assessment of the section 6038(b)(1) penalty also weighs against the argument that Congress adopted the IRS's interpretation. Typically, this argument is invoked in relation to regulations or other formal policy statements. *See Calamaro*, 354 U.S. at 359 (reviewing a reenactment argument in relation to a regulation); *OfficeMax, Inc. v. United States*, 428 F.3d 583, 596 (6th Cir. 2005) (reviewing a reenactment argument in relation to a revenue ruling). In this case, the accompanying regulations do not state that the section 6038(b)(1) penalty is assessable. Rather it was simply the practice of the IRS to assess the penalty. There is no evidence in the record that IRS assessment of the section 6038(b)(1) penalty was longstanding or frequent enough to attract the attention of Congress. Without a more formal indication from the IRS of its interpretation, it appears unlikely that Congress was aware of this practice.

Additionally, the IRS's interpretation is not supported by the text of the statute. As discussed above, there is no basis in the statute for the IRS's assessment authority. Without this textual hook, reenactment

of the statute would "be a bizarre way for Congress to codify" the interpretation. *See Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374, 378 (D.C. Cir. 2005) (holding that the prior construction canon would be a "bizarre way for Congress to codify" the IRS's interpretation of a statute when the statute does not cover the subject). Therefore, the prior construction canon cannot be used to view the reenactments as reenforcing the IRS's interpretation.

### 5.    *Other Policy Considerations*

Although our textual analysis is sufficient to conclude that the IRS lacks the authority to assess the section 6038(b)(1) penalty, in full consideration of the D.C. Circuit's reversal of our decision in *Farhy*, we take this opportunity to address the policy concerns advanced by the D.C. Circuit. Under our reading that the IRS lacks the authority to assess the section 6038(b)(1) penalty, the D.C. Circuit reasoned that the penalty would become "largely ornamental." *Farhy v. Commissioner*, 100 F.4th at 232. We disagree.

The D.C. Circuit reasoned that the Department of Justice will not be incentivized to bring a collection action because of the meager $10,000 penalty. This rationale fails to account for the accumulation of penalties over several tax years. For each tax year in which a taxpayer fails to comply with his filing obligations, a $10,000 penalty can be imposed, which can add up over a period of noncompliance. § 6038(b)(1). Take petitioner for example: The IRS assessed the section 6038(b)(1) penalties after petitioner's failure to comply with his reporting obligations for 12 years. This resulted in penalties of $120,000. Likewise, in *Farhy*, the taxpayer's failure stretched eight years and resulted in section 6038(b)(1) penalties of $80,000. *See Farhy*, 160 T.C. at 401.[11]

The $10,000 section 6038(b)(1) penalty is comparable with other penalties that the Department of Justice currently collects. A taxpayer must file an annual report (FBAR) disclosing any interest he has in a foreign bank account, securities, or other financial accounts with the IRS. *See* 31 U.S.C. § 5314(a). Failure to timely file an FBAR for financial accounts in which the taxpayer has an interest over $10,000 may result in various civil penalties depending on the taxpayer's culpability. *See* 31 U.S.C. § 5321(a)(5). Nonwillful failure to file an FBAR results in a penalty of no more than $10,000. *See id.* subpara. (B).

---

[11] A taxpayer may also be liable for continuation penalties under section 6038(b)(2).

The IRS may assess the FBAR penalty; however, it is generally collected by the Department of Justice via a civil action in a district court. *See* 31 U.S.C. § 5321(b)(1) and (2); *see also Williams*, 131 T.C. at 59 n.6 ("The collection mechanism authorized in the FBAR statute itself is not lien or levy but 'a civil action to recover a civil penalty.'" (quoting 31 U.S.C. § 5321(b)(2)).[12] We have no reason to believe that the Department of Justice would treat its collection responsibility for the section 6038(b)(1) penalty any differently than that of the FBAR penalty.

The separate civil lawsuit for the collection of a section 6038(b)(1) penalty would likewise force the IRS to exercise more individualized and thorough judgment before asserting the penalty. Most taxpayers are not like petitioner with criminal convictions for actions related to the section 6038(b)(1) penalty. In many cases the section 6038(b)(1) penalty is systemically assessed (that is, "systemically imposed as a preprogrammed, automatic matter") with a taxpayer generally learning of the penalty in a letter after the IRS has assessed the penalty. *See* Taxpayer Advocate Service, National Taxpayer Advocate Annual Report to Congress 124–26 (2020) (noting that in 2018, 90% of section 6038 penalties and section 6038A penalties were systemically assessed rather than manually). A large portion of the systemically assessed penalties are subsequently abated. *See id.* at 124–25 (noting that in 2018 the IRS abated 55% of the systemically assessed section 6038 penalties and section 6038A penalties). Requiring the IRS to refer these cases to the Department of Justice will force individual consideration of these cases before taxpayer liability for this penalty.

Even if the Department of Justice does not bring a civil action against every taxpayer for the section 6038(b)(1) penalty, the mere possibility of such enforcement will have a deterrent effect. Other provisions of the Code also encourage compliance with the filing obligations under section 6038. For example, section 6662(b)(7) imposes a 40% accuracy-related penalty for an understatement of income tax related to any transaction involving an undisclosed foreign financial asset. *See also* § 6662(j)(1). An undisclosed foreign financial asset

---

[12] We use the FBAR penalty merely as an example of a comparable-value civil penalty that the Department of Justice routinely collects via a separate civil action in a district court. *See, e.g.*, *United States v. Buff*, No. 19 Civ. 5549, 2023 WL 4447072 (S.D.N.Y. July 11, 2023) (discussing FBAR penalties of $30,000); *United States v. Said*, No. 22-cv-20360, 2023 WL 11821043 (S.D. Fla. Apr. 27, 2023) (discussing FBAR penalties, statutory additions, and interest of $64,133); *United States v. Sinyavskiy*, 21-CV-2757, 2022 WL 4662789 (E.D.N.Y. Sept. 30, 2022) (discussing FBAR penalties, statutory additions, and interest of $85,560).

includes an asset that a taxpayer fails to properly disclose in accordance with section 6038.  *See also* § 6662(j)(2).  This alternative penalty is another mechanism to encourage compliance.

### *Conclusion*

Respondent assessed the section 6038(b)(1) penalties without the statutory authority to do so.  Accordingly, we reaffirm our prior holding that respondent may not proceed with the collection of these penalties from petitioner via the proposed collection actions.

To reflect the foregoing,

*An appropriate order will be issued*.

Reviewed by the Court.

KERRIGAN, FOLEY, BUCH, PUGH, ASHFORD, URDA, COPELAND, JONES, TORO, MARSHALL, WEILER, WAY, LANDY, ARBEIT, and GUIDER, *JJ.*, agree with this opinion of the Court.

NEGA, *J.*, dissents.

JENKINS, *J.*, did not participate in the consideration of this opinion.